Louisiana. Mr. Edmonds. Good morning, Your Honors. Chris Edmonds for Carolyn Clark, the appellant. May it please the Court. Broadly, this case presents two issues. First, the State of Louisiana, through its Office of Motor Vehicles, claims the right to treat wheelchair users less favorably than other drivers or other people with less visible conditions solely based on the fact that they use a wheelchair. They cannot do so. The District Court incorrectly placed the burden... Are you saying being in a wheelchair has... there's literally no relationship to potential concerns about ability to drive? No, Judge Ho, that in the run of cases going to have certain conditions that may affect their ability to drive. It's not wrong to ask the question. It's not wrong to ask the question. It's the way that they ask the question. And the fact that people with less visible conditions are not asked this question. So, for example, someone with alcoholism or narcolepsy is unquestionably has a condition that it's going to affect their ability to drive, but they don't receive the same invasive medical screening that Ms. Clark did. So, that's the first issue in the case. Before we move on from that, it's undisputed that your client told the OMV employee that she had hand controls. Is that correct? No, that is very much disputed, Your Honor. What happened was Ms. Clark went to the OMV to renew her license, not even to renew her license, to get a duplicate license just to change her address. And she handed in the form and an employee at the desk, the motor vehicle compliance analyst, MVCA, noticed that she had a wheelchair and said, oh, based on our policy to give this, we have to fill out this form or have your doctor fill out this form. And she said, well, why? And she said, it's because you're in a wheelchair. The lady asked her certain questions about hand controls and Ms. Clark didn't know what she was talking about. Did she later say in the second encounter that she used hand controls in the vehicle? No, Your Honor. So, that's the first issue is that we don't dispute that the state has the right to protect public safety and to ask certain questions of applicants for driver's license to make sure that they can safely operate a motor vehicle. But they have to do so in a way that's not discriminatory. And here they've made an offensive, categorical assumption about people who use wheelchairs that we're going to, across the board, impose additional burdens on wheelchair users that is not present for people with less visible disabilities. Secondly, even assuming that some measure of additional scrutiny was necessary in this case, we've argued that the state has to narrowly tailor that inquiry and can only seek information that is necessary. Ms. Clark asked that she be allowed to answer questions that, on the form, that relate to her use of a wheelchair. The state denied that request. Even though, under deposition, all of their administrators and employees testified that that would be a reasonable modification of the policy. And... We're just talking about a form, right? We're talking about a form, yes. But it's not just a form, Your Honor, because, first of all, this form asks invasive medical questions that are available to all OMV employees. And as the state has admitted, the OMV's website, along with many other state agencies, has been victim to malware attacks. So this information could be released to the general public. So there has, you know, even assuming that some measure of questioning was necessary, under the state's test, there's no limit. They could ask you any question. They could, you know, who was your best friend in third grade? What was, you know, what was the first time you got a fever? You know, when did you start potty training? I mean, there's just no limit under the state's inquiry. And the district court assumed that these questions were necessary without conducting the necessary analysis to deter, going line by line and saying, okay, is this question actually necessary? Is this question necessary? And on this, in the same vein, the district court improperly placed the burden of persuasion on Ms. Clark to show that the policy is unnecessary. But it's undisputed under the DOJ's regulations and under this court's case law that when a public entity admittedly discriminates on the basis of a disability, the state bears the burden to show that that discrimination is necessary. Let me ask you, do you argue the case that seems on point here is Theriault v. Flynn. Yes. Is your position is that the majority in that case was wrong? Our position is that the majority reached the correct result with the wrong analysis. So we would Judge Lopez wrote a concurrence in that case. How does that help you? Are you arguing that the concurrence got it right? Correct. Yes, because the concurrence said, you know, I agree that there was no unlawful discrimination in this case, but I disagree that Mr. Theriault bore the burden of persuasion because the state in that case, I believe it was New Hampshire, admitted that it discriminated. In those types of cases under this court's case law and Rizzo and other cases, the state bears the burden to justify that disparate treatment. How do you prevail in this case if we agree that with Judge Lopez's concurrence? In the Theriault case, for example, the gentleman, his disability was so severe that he couldn't even sign his name. Obviously you need your hand to operate the steering wheel. So there were symptoms that the person exhibited at the desk that the employees said, okay, we need to give this person another driving test. In this case, there was no such symptoms. In fact, as the record is now clear, the condition that causes Ms. Clark's wheelchair use doesn't affect her ability to drive. She only needs a wheelchair when she's standing up for long periods of time. But when you're in a car, you're necessarily sitting down. So that's the first distinction. The second distinction is that- She would have to ask some questions to ferret out what she was able to do and what she was not able to do. Absolutely, Your Honor. Absolutely. And we don't dispute that they have the right to do that. But that's just not what happened in this case. Secondly, to your point, Judge Engler- What do you mean that's not what happened in this case? I mean, she presented herself as wheelchair-bound, or at least wheelchair-using. The state, I think you say understandably, wants to ask a series of questions to find out, okay, you're needing a wheelchair. Does that mean that you're qualified or not qualified to drive? You've stipulated that qualification is obviously a required element here. They determined through the process that she was in fact qualified and gave her a license. Well, Your Honor- Why are we here? Judge Ho, so they didn't actually ask her any specific questions and say, why are you in a wheelchair? Well, I'm referring to the form. I'm not talking about verbal questions. But they used the form. Sure. I think your beef is basically the form is too invasive. There needs to be more individualized administrative treatment. That's the crux of your case, right? Well, two parts to that, Your Honor. The first part is that only wheelchair users are given this form, when the vast majority of questions in the form ask questions that are about conditions that would be invisible to the naked eye, right? So our position is, in Terrial, for example, the court said it would be unreasonable to expect the state to give every single person a new driver's test. But here, there's no reason that the state of Louisiana, and they have presented none, there's no reason that they couldn't require every single applicant for a driver's license to take this form to their doctor and have them submit it. And that would be a big pain for drivers in Louisiana, but it would eliminate the discrimination problem. So that's the first issue. But the second issue is, if you are going to discriminate, if you are going to say that wheelchair users categorically propose more risks than people with schizophrenia or alcoholism or what have you, first of all, you need evidence to support that, right? You can't just make a stereotypical assumption. You actually need to put some evidence in the record to support that categorical assumption. But secondly... What does that look like? You're asking the state to sort of present evidence as to why it's a greater percentage wheelchair that raises questions versus these other populations? Absolutely. Do some sort of study about people that use wheelchairs and that they are more prone to having accidents or something like that. But I think just as a matter of common sense, we think of people who abuse alcohol getting DUIs, I would submit that that is a much graver danger to public safety. Yet people who have alcoholism are not required to fill out this form, because unless they show up to the OMV, you know, just totally drunk, they're not going to have to fill out this form. So yeah, we would... You don't need to decide in this case what measure of evidence is necessary, but something. I mean, under the regulations, under 28 CFR 35.130H, a public entity may impose legitimate safety requirements necessary for the operation of its services, but it must ensure that its actual risks not on mere speculation, stereotypes, or generalizations. So we would... I mean, actual risks means that they have to present some sort of evidence of the risks. This is what I think the disconnect here. I understand your argument about the overly broad nature of filling out a form that has medical information that may be entirely irrelevant to the ability to drive for that individual, but who makes that determination? I mean, we know that the people who work at the OMV, I would assume for the most part, are not medically trained. They're certainly not doctors. So when they're presented with a circumstance that would suggest some limitations or some hindrance to driving ability, what would authorize them? What would be the reason for them to strike from the floor? You don't have to answer this. You don't have to answer that. I deem these sections to be pertinent to you as a potential driver. How would a person, your garden variety OMV employee, make that kind of a determination? Absolutely. Well, you're absolutely right, Judge Engelhardt, that the OMV employees have no medical training. But I would direct the Court's attention to policy 1.23.00, and this is at Record on Appeal 170 to, let's say, 172. And this is what gives the OMVs the authority to ask questions. And if you look at 172, it says, the remark section must show the cause justification of why medical required and reference the sections needing to be completed. So right there it says, the sections needing to be completed, which suggests that not every section needs to be completed. And, in fact, all the testimony in this case from the OMV officials corroborates that applicants do not need to complete every single section. In fact, it is undisputed that the OMV, the medical unit and the OMV employees simply defer to the binary yes or no opinion of the doctor. In other words, you know, the form could be filled out with all sorts of information, and if the doctor at the end of the day says, yes, this person can safely drive, they are going to unflag that application and send it through the system and say, okay. Right. But that's the doctor's, the doctor is signing off on it. Sure. That's not an OMV, you're outside the scope of the defendants in this case. Sure. Let me ask you, since your time is running out, and not to curtail your argument, but I wanted to ask you about the accommodation in this case. What specifically was the accommodation and when was it asked for or requested? Sure. So she received the form, went back to her car, looked at the form, said, why is there so many questions, and then went, returned to the OMV, asked, does she need to complete the whole form? She said, Catherine Kidder said, yes, the whole form needs to be completed. She said, why? She said, because you're in a wheelchair. And she says, well, but I don't, you know, a lot of these questions don't have anything to do with my ability to be in a wheelchair. Under this court's case law, you don't need to request a specific, you don't even need to know what your accommodation or modification is. There needs to be an interactive process to determine what the reasonable modification is. But it sounds like there wasn't an interactive process. It sounds like there was a, rather a heated conversation or a disagreement at which point the plaintiff, in this case, left. Correct. And then she called the medical unit several times, received no response. She filed a complaint with the Inspector General's office, which they confirmed received the complaint, but never took any action on it. And I would also, the other authority that we have, Your Honor, to be completed comes from Louisiana state law, which is 32.403.2. And that requires that applicants tell the OMB what their disability is and then the limitations imposed by that disability. I will reserve the balance of my time. Ms. Gleiser? Good morning, Your Honor. May it please the Court? Phyllis Gleiser on behalf of the Louisiana Office of Motor Vehicles, just to shorten the entire name of the agency. I'd like to say a few words pertaining to the claims in this lawsuit. First of all, Ms. Clark's admission that it was okay for the Office of Motor Vehicles to ask her some questions about her disability and the limitations that it posed is dispositive of a big chunk of the claim in this that was presented on appeal. That was the argument in the trial court that the Office of Motor Vehicles was allowed to ask Ms. Clark questions, but they asked too many that are Not just too many, but pretty invasive questions that you don't ask of other populations. On that What's the point of that? On that point, Your Honor, the Office of Motor Vehicles asks those questions of every person with a disability. In fact, the statute cited just a few seconds ago, 32.403.2, which is the statute, requires it of every application by every person with a disability. The idea or the notion, the argument that this form is only given to individuals in a wheelchair is simply untrue, and it's not supported by I think I heard counsel talk about alcoholism, schizophrenia, those sorts of things. Do you ask these questions of those populations? Yes. Yes. They are. Everyone with a physical or mental disability that could affect their ability to drive is required by Louisiana law to You disagree with what opposing counsel just said? Yes, sir. What does the record say? Is there something in the record that indicates which side is correct on this question? Yes, sir. For one thing, the statute itself that we just cited, along with the policy that is in the summary judgment record, 1.23, I think, both I thought the state said at one point that she was not required to fill out everything. So there's some tension between what you just said. Sure. That everyone with a disability has to fill out the form. Yes. Everyone with a disability has to fill out the form. The form contains two broad parts, a medical part and a vision part. And the testimony establishes that the vision part didn't necessarily have to be filled out if the vision part wasn't that issue. Is there any forbearance that OMV can employ? Let me rephrase it. Is there any appeal or review that a person can avail themselves if they are, like this plaintiff, given a form that appears to be so invasive, can they appeal to someone at OMV and say, here's the reason why I don't think I should answer these questions and get some type of indulgence on that? I'm not sure indulgence is the right word. But to answer your question, Judge Englehart, yes. She could have called the medical unit. She didn't get through. I think she got reached a busy signal. So she didn't speak with anyone or leave a message with the medical unit. She could have asked them for an explanation of the form, which would have just given her the explanation that's in the policy itself, that the doctor's obligation here is to answer the parts of the form that are relevant to her and her condition. So there is somebody with the authority there to say, oh, well, as long as your doctor answers sections A, D, and F, you don't need to answer the remaining sections. Not that specifically, because the question of what is relevant to Ms. Clark and to her condition is a question for a doctor, not a question for a bureaucrat at the Office of Motor Vehicles. And so I think that's where we've had a big rift here in the case. First of all, there's no medical evidence here at all. There's no medical testimony, no expert opinion about what questions are or are not relevant to Ms. Clark and her condition, to her use of a wheelchair, or even to the Office of Motor Vehicles' analysis of whether someone can safely drive. Let me ask the broader question that I think goes to the heart of the argument against this state. Is there any type of record evidence, like a study or something, that shows that people who use wheelchairs are likely to be impaired drivers or accident-prone drivers? Is there any type of evidence of that that we can examine? Or is it just a common-sense notion that people who use wheelchairs don't always have control of their legs, which would be used to operate pedals? To answer your question, Judge, no, there's no specific study in the record about the use of a wheelchair. That is the reason that she was in a wheelchair is the reason that they wrote on the form that they gave her the form, but they didn't know why she was in a wheelchair. And so what the Office of Motor Vehicles has done over many years in many different ways is put together this policy that lists a number of different conditions and their resulting symptoms that are of concern to them. So regardless of what the cause, in this case, the issue is loss of consciousness, umpteen different conditions can cause a loss of consciousness. And the loss of consciousness under various synonyms is all over this policy. It is of the utmost concern to the Office of Motor Vehicles. That's the disability Ms. Clark has. A wheelchair is not a disability. A wheelchair is a mobility-assistive device. They didn't know what was wrong with her, and there was no way to know what was wrong with her, except for the medical form and to have her doctor explain what was wrong with her. One of the specific sections of the form that Ms. Clark complains about was about the blood pressure readings, but her condition specifically causes tachycardia and is related to blood pressure. So, you know, a lay person might connect a wheelchair with an orthopedic or a neurological condition. That wasn't the case. And so that's not the way that the policy is set up or how the analysis works. So the department's inquiry into whether a person is capable, is qualified, I should say, to operate a motor vehicle requires the department to comply with state laws, with lawsuits coming out of the state of Louisiana. The most significant one is about a driver who had a seizure after being issued a driver's license. That suit was against the Office of Motor Vehicles. All of those things go together along with experience and expert opinions coming from all sorts of agencies, insurance, Highway Safety Administration, all those places that determine the qualifications to drive. Those aren't in the record, though. You're telling me that's the history. Right. And here, one of those qualifications, and it is undisputed, is the ability to physically drive. That was put into question not only because Ms. Clark was in a wheelchair, but because she affirmatively answered the question on the form, the big red flag for the department. And the record also shows that when Ms. Clark went to the counter in her wheelchair, she wasn't immediately handed the form. She was asked a number of questions by the motor vehicle analyst at the desk before she went in the back and got the form. The other thing that I should note, just so that I don't run out of time first, is that between the time Ms. Clark first went to the Office of Motor Vehicles and the time she got her driver's license was two weeks. And during that time, she had her active driver's license. They didn't take it away and punch a hole in it or anything. She had it with her. There was no suspension, no penalty, no added fee, except for the doctor's visit, which she would have had to pay for anyway to answer only the question. And so she wasn't denied access to the program, which is one of the conclusions that Judge Jackson reached. Furthermore, she didn't require any accommodation to obtain her driver's license. Ms. Clark did not ask for an accommodation. She asked to be excused from a fundamental qualification by skipping the part of the form that she didn't want to answer, one that the people at the Office of Motor Vehicles couldn't have told her what parts to answer. Only her doctor could have answered that. Furthermore, the request to be excused from answering the parts that were irrelevant to her use of a wheelchair could very easily have skipped over the parts that were relevant to her use of a wheelchair, like the blood pressure questions and the others related to actually why she was using a wheelchair. And so the request to just not have to answer the whole form, which is all she asked for, was not a request for an accommodation. It wasn't necessary. Her doctor answered the parts of the form that were relevant to her and her condition, and she got her driver's license in LA, went to her doctor, but without interruption, without suspension, without added penalty. And so what she asked for was not by any definition an accommodation, because an accommodation requires the department or the state to change something, whether it's a policy or it's access to the building, in order to her condition. She just simply asked to not have to fill out the whole thing. Your point is that the right at issue is the right to drive, not the right to a particular administrative process? Well, in the context of the ADA, I think the right at issue would be her right to get her driver's license and not to be unreasonably or unnecessarily denied that ability or that they don't add too many hoops to jump through simply because she's disabled. I assume you would agree that it's not just about the ultimate substantive right to drive. I assume you would agree that the ADA, I forget the term, but it's all the benefits and programs, that that would include procedural fairness. I take it that's basically what we're hearing. Yes, Your Honor. Yes, that is correct. The way that I think about it is that they can't add too much hassle. They can add a little bit, as is necessary, which was the case here. And then, you know, this is pretty minimal in terms of hassle. She would have had to fill out at least part of the form. She admits that. She hasn't identified what What if we were to conclude that it's obviously not unreasonable for the state to have questions, but that you could have provided a more narrowly tailored system, that instead of one form for this entire population, you could have had a bit more careful process that might have saved the plaintiff a little bit of time? What legal standard would apply to that situation? It would be an academic discussion, Your Honor, because there's simply no evidence in the record. You're saying that literally every single question on this form, the state had no excuse me, with a cane? We That seems Right Your point is that you have administrative costs that, you know, you need to have a general process. It's too expensive to be more individualized. But in fairness, you could be more individualized, and that would provide a bit more procedural fairness. My question is, what standard governs that question? The standard that would govern that question in this case, it's really Sort of a hardship to the government? Well, yeah, I mean, I think hardship to the government would certainly be part of it. The problem is that in support of the state's motion for summary judgment, the state offered the policy which details why each of those questions is asked. And the questions are a little bit more broad than asking about particular conditions, because particular medical diagnoses are not disabilities, right? We're looking for the actual effect, the loss of consciousness, for example. And so they ask about diabetes, and they ask about blood pressure, and they ask about alcoholism, and they ask about the different conditions that can cause a person to suddenly lose consciousness. They don't specifically ask about the condition that Ms. Clark has. A form that asks about every single medical condition and diagnosis would look like, you know, one of those medical school books that made our law school books look like this situation. Also would provide an opening for doctors to just circumvent the actual question. The Office of Motor Vehicles has tailored its policy and tailored its form to pinpoint conditions that cause it concern with the ability to safely operate a motor vehicle. Again, one of the most significant being loss of consciousness, loss of vision. And so, you know, the form is tailored for that, along with asking about what the permanency of the condition, whether it will change and degenerate over time and things like that. The question of whether certain sections are irrelevant to the applicant, or in this case Ms. Clark's condition, again must be answered by her doctor. That doesn't mean that, say, questions about the neurological conditions shouldn't be on the form. But that between she and her doctor, they can, you know, answer yay or nay, these conditions affect her or her ability to drive or not. I mean, I think, you know, there's Ms. Clark's position was allowed to answer the question no when she didn't have a condition and not applicable to the follow-up questions, and that was not an issue. Let me take an example. You ask on this form, has patient ever been treated in a mental hospital? I take it that's not a question you ask of all your drivers. It's a question that would be asked of everyone who receives the form, I suspect. Right, right. It's only for people who get this form. It's not a question that's on your standard form for all. Right, no, it's not on the main application. So the state has made a decision, for whatever reason, we don't need to ask every driver if they've been to a mental hospital. What is it about a wheelchair access or a cane usage that requires you to ask that question? That requires us to ask the question about... About mental hospital. Mental hospital. I don't know if that's a connection, but that would be... You see what I'm saying? There's room for more individuation and less intrusion here. So I think there's... The question that I'm still asking is sort of, you know, do we just... As a court under the ADA and the Rehab Act, are we supposed to scrutinize at this level of detail, or are you saying that there's some deference? What is the standard? Because without question, we can make a better form. Sure. Because the only question before this court is, can we do a better form that is less invasive? The answer is yes, and we should do it. I assume the state has some sort of a legal argument as to why we are not going to be analyzing this case at that level of scrutiny. Right. Or specificity. Yes, Your Honor. The state is entitled to deference in the decisions that it makes with regard to licensing and public safety. I believe the Tarrel Court discussed that discretion, along with the Fifth Circuit, and other cases pertaining to driver's licensing. Where is that in the statute or regulation? Is there a particular clause that you're... I didn't bring my table of authorities up here. Let's see. Recently, Judge Dick in the Middle District in the Lewis case talked about the state's right and ability to impose reasonable safety measures, which could appear to discriminate, but sometimes people with disabilities need to be evaluated more closely before they are issued a license or admitted into a program. Here, Ms. Clark, her... To your point that this is, it could be better, but it's reasonable that you're doing it this way. Yes. Is that from reasonable accommodation or from other part of the statute? From the other part of the ADA? What part of the statute are you invoking? Well, the accommodation part is from a regulation. It's not from the statute itself. The ADA itself allows for the state to make these reasonable safety findings. In fact, the original guidance to the ADA, the original guidance specifically noted motor vehicle driver's licensing is one of those state functions that will necessarily take into account the ability of a person to safely operate a motor vehicle, including people with disabilities. Here, it must be noted that the policy itself, 1.23.00, which is in the record, specifically allows the doctor to only answer the relevant questions on the form. So, thank you, Your Honors. I'd like to address your question, Judge Ho, about what standard governs this case. The standard that governs this case is 28 CFR section 35.130B71, which says that a public entity shall make reasonable modifications when the modifications are necessary to avoid discrimination, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service program or activity. Your opponent just said that the form allows the physician to decide what's relevant. Is that correct? No, that is incorrect. The form itself says that it needs to be completed in its entirety. It's also incorrect to suggest that Ms. Clark's physician did not answer certain questions of the form. He answered either with a yes or no to every question. The only time he wrote not applicable was when the answer to the initial question was no. So, does your client have diabetes? No. And then there's follow-up questions about diabetes, obviously not applicable. But divulging whether or not you have diabetes is itself divulging medical information. Would your client be satisfied if the form simply said the doctor can answer as the doctor thinks is appropriate? Well, that's exactly what she was asking for, Judge Ho. I mean, we would prefer that she not have to fill out this form at all, but she asked to, you know, do I need to fill out the whole form? And Ms. Kidder told her, yes, you have to fill out the whole thing. Even though when she was under oath being deposed, Ms. Kidder said that applicants should be given the option to write not applicable to certain questions. And that is at Record on Appeal 209. I'm sorry, but I'm just changing one sentence in the form. Yeah, I mean, that would address the reasonable modification issue. It would not address the disparate treatment issue. And that's what I want to address right now because my friend on the other side said that everyone with a disability is required to fill out the medical vision form. That is patently untrue. They presented no evidence of that below. They made no argument below. They have not responded to our arguments on that front on appeal. And it is undisputed that state law, and this is Louisiana revised statute 32.403.2, which they cited below, this applies only to drivers who are applying for the first time. Ms. Clark had already had a license. She was just changing her address. The second thing is that this section places the burden on applicants to submit the information. I'm sorry, let me make sure I understand. You're agreeing that when it's a first-time applicant, all disabled people have to follow this form? No. No, no, no. So when it's a first-time application, so Ms. Glaser just admitted that first-time applicants do not have to answer the question, have you ever been in a, and I see my time has run down, with your permission. Ms. Glaser said that first-time applicants do not have to answer the question, have you ever been in a mental hospital, right? That's not on the application. It's only under policy 1.23.00 when an employee at the desk sees someone with crutches or a wheelchair, they hand them this medical form. And so when applicants are applying for the first time, the onus is on the applicant to voluntarily disclose. I mean, there may be a question there that says on the application, do you have any disabilities that would impair your ability to drive, right? And an applicant can answer that question however they please. I mean, I assume they have to answer it honestly, but there's not all the specific questions that you have to answer. So that is not the case. So if there's no further questions, thank you, Your Honors.